IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULEE CASTRO,<br><br>        Plaintiff,<br><br>    v.<br><br>MACY'S, INC. et al.,<br><br>        Defendants. | No. C 16-5991 CRB<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION AND STAYING CASE** |

Now pending before the Court is Defendants' Motion to Compel Arbitration. See generally Mot. (dkt. 14). Defendants Macy's, Inc. and its subsidiary, Macy's West Stores, Inc. (collectively "Macy's"), conduct business in Alameda County, California. FAC (dkt. 6) ¶ 3. Plaintiff Julee Castro ("Castro") is a former Vice President Store Manager at a Macy's store in Alameda County, California. Id. ¶¶ 21-23. Macy's moves to compel arbitration on the ground that Castro agreed to arbitrate all disputes arising out of her employment. At issue is whether Castro agreed to arbitration by failing to submit an Opt Out Form, and whether Castro knowingly and explicitly consented to waive her right to a judicial forum for her civil rights claims. The Court concludes that Castro implicitly agreed to arbitrate all disputes arising out of her employment with Macy's, and therefore GRANTS the motion with regards to Castro's employment claims and civil rights claims.

## I. BACKGROUND

### A. Factual Allegations

Castro worked at Macy's from November 11, 1970 to September 6, 2016. FAC ¶¶ 13-21. Castro began as a "part-time holiday hire," and advanced to the Vice President Store Manager position that she held from 1993 through April 29, 2016. Id. ¶¶ 9-17. Castro contends that she received positive performance reviews throughout her tenure as Vice President Store Manager. Id. ¶ 20.

Castro alleges that starting in March 2014, her new manager, District Vice President Lori Randolph, regularly commented that Castro should end her employment with Macy's due to Castro's advancing age. Id. ¶ 30. In August 2015, Castro reported Randolph's ageist comments to a Human Resources Manager. Id. ¶ 57. In September 2015, Randolph required Castro to demote a lower-level manager who was over 60 years of age, stating that she would replace the manager with a younger person who "had energy like a puppy dog." Id. ¶ 65.

On January 8, 2016, Randolph and the District Director of Human Resources met with Castro to discuss several purported challenges that Castro's store experienced during the holiday season. Id. Castro alleges that Randolph began the meeting by reminding Castro of Randolph's prior comment that she would let Castro know when it was time for Castro to end her employment with Macy's. Id. ¶ 83. Randolph concluded the meeting by saying, "I need your decision by Monday or this will not end well," which Castro interpreted as a veiled threat of impending termination. Id. ¶¶ 87-91. As a result of great anxiety and stress due to Randolph's alleged termination threat, Castro took certified disability leave, which Castro's physician authorized to continue until August 1, 2016. Id. ¶¶ 98-102. On April 27, 2016, Castro received an unexpected call from the District Director of Human Resources stating that Macy's was removing Castro from her position as Vice President Store Manager. Id. ¶¶ 124-25.

On August 22, 2016, HR Services Leave of Absence Division notified Castro that she would be terminated effective September 7, 2016, if she did not return to work or provide

2

1 new physician documentation stating her anticipated return date.[1]  Id. ¶ 109.  On September
2 6, 2016, Castro resigned from employment.  Id. ¶ 111.  Castro brings claims for violation of
3 the Federal Age Discrimination in Employment Act, violation of the Americans with
4 Disabilities Act, violation of the Fair Employment and Housing Act,  violation of the
5 California Employment and Housing Act, wrongful constructive termination, and breach of
6 an implied-in-fact employment contract.

### B.     The Arbitration Agreement

Macy's, Inc. uses a dispute resolution program called "Solutions InSTORE," which applies to employees of Macy's and Macy's subsidiaries, including Macy's West Stores, Inc.  Melody Decl. (dkt. 14-1) ¶ 4.  The Solutions InSTORE program involves four steps: (1) the "Open Door" step, in which employees bring their concerns to a supervisor or local management team manager for informal resolution; (2) review by the Office of Senior Human Resources Management; (3) a request for reconsideration by a panel of peers or by the Office of Solutions InSTORE; and (4) binding arbitration.  Id.  ¶¶ 9-10, Exs. A–B.  The arbitration agreement explicitly covers all "employment-related claims as of January 1, 2004 arising under federal, state or local statutory or common law. . . these claims include, but are not limited to, claims arising under the Age Discrimination in Employment Act (ADEA), Title VII of the Civil Rights Act of 1964, as amended, including the amendments of the Civil Rights Act of 1991, the Americans with Disabilities Act (ADA), . . . state discrimination statutes, state statute, and/or common law regulating employment termination, misappropriation, breach of the duty of loyalty, the law of contract or the law of tort; including, but not limited to, claims for malicious prosecution, wrongful discharge, wrongful arrest/wrongful imprisonment, intentional/negligent infliction of emotional distress or defamation."  Melody Decl. ¶ 13, Ex. A at 6.  Employees may choose to opt out of the arbitration agreement.  Id. at 8.

If an employee seeks to opt out of the binding arbitration agreement, he or she must

---

[1] According to the Complaint, Castro was authorized for disability leave until August 1, 2016.  FAC ¶ 107.  It is unclear from the record whether Castro returned to work at any time between the expiration of her original disability leave and her resignation.

3

1 submit an "Early Dispute Resolution Program Election Form" (hereafter, "Opt Out Form") to 2 a P.O. box in Mason, Ohio within 30 days of receipt of the Opt Out Form.  Melody Decl. 3 ¶ 26; see also id. Ex. F (Opt Out Form).  The Opt Out Form instructs employees to 4 "RETURN THIS FORM ONLY IF DECLINING THE BENEFITS OF ARBITRATION." 5 Id., Ex. F (emphasis in original).

6 Macy's mailed all active employees the Opt Out Form and InSTORE packet in Fall 7 2003 and again in Fall 2004.  Id. ¶¶ 23, 39.  Macy's presents evidence that it mailed the Opt 8 Out Form to Castro in September 2003, a welcome brochure for the InStore arbitration 9 program titled "You're In Good Company" in January 2004, and a second Opt Out Form in 10 October 2004.  Id. ¶¶ 27, 37, 42, Exs. H, L, P.  Castro denies receiving any of the written 11 materials regarding the arbitration agreement, including the Opt Out Form.  Castro Decl. 12 (dkt. 16-1) ¶¶ 16-19.

## II.  LEGAL STANDARD

14 The Federal Arbitration Act (FAA) provides that an agreement to submit commercial 15 disputes to arbitration shall be "valid, irrevocable, and enforceable, save upon such grounds 16 as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Such 17 commercial disputes include disputes arising in the employment context.  See Circuit City 18 Stores, Inc. v. Adams, 532 U.S. 105, 109 (2001).  The FAA places arbitration agreements on 19 "an equal footing with other contracts and requires that private agreements to arbitrate are 20 enforced according to their terms."  Rent-A-Ctr. West, Inc. v. Jackson, 561 U.S. 63, 67 21 (2010) (internal citations omitted).  A party may petition a court to compel "arbitration [to] 22 proceed in the manner provided for in such agreement."  9 U.S.C. § 4.

23 Generally "a party cannot be required to submit to arbitration any dispute which he 24 has not agreed so to submit."  AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 25 643, 648 (1986).  However, courts have developed a "liberal federal policy favoring 26 arbitration agreements."  AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011).  27 The district court's role under the FAA is limited to determining "(1) whether a valid 28 agreement to arbitrate exists, and if it does, (2) whether that agreement encompasses the

4

dispute at issue. If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000); see also Howsam v. Dean Witter Reynolds, 537 U.S. 79, 84 (2002).

Arbitration agreements are "a matter of contract" and "may be invalidated by generally applicable contract defenses, such as fraud, duress or unconscionability." Rent-A-Ctr., 561 U.S. at 67-68. Parties may "agree to limit the issues subject to arbitration" and "to arbitrate according to specific rules." Concepcion, 563 U.S. at 345. "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 81 (2000).

### III.   DISCUSSION

Macy's moves to compel arbitration, arguing that Castro is bound by the arbitration agreement because she did not opt out despite being provided two opportunities to do so. Mot. at 1. Castro disputes ever receiving the mailed arbitration agreement or Opt Out Form, and thus contends that she did not consent to the arbitration agreement. Castro Decl. ¶¶ 16-19. Castro also argues that she did not knowingly and explicitly consent to waive her right to a judicial forum to adjudicate any civil rights claims against Macy's. Opp'n (dkt. 16) at 1. This Order will address whether Castro's failure to return the Opt Out Form resulted in a valid and enforceable arbitration agreement, then whether Castro knowingly agreed to arbitrate her civil rights claims.

#### A.   Valid and Enforceable Agreement

Whether the parties in the present case entered into a valid and enforceable arbitration agreement is determined by California contract law. See Circuit City Stores, Inc. v. Najd, 294 F.3d 1104, 1108 (9th Cir. 2002). Under California contract law, a valid contract exists only if both parties consent to the contract. United States ex rel. Oliver v. Parsons Co., 195 F.3d 457, 462 (9th Cir. 1999).

### 1. Mailed Arbitration Agreement and Opt Out Forms

Castro unequivocally denies receiving the arbitration agreement and Opt Out Form in the mail. Castro Decl. ¶¶ 16-19; see also id. ¶ 10 ("I never received any written materials from Macy's setting forth the Macy's Solutions InStore Program."). Macy's points to two separate mailing lists with the names and addresses to which it mailed the arbitration agreement and Opt Out Form in 2003 and 2004, both of which list Castro as a recipient. Melody Decl. ¶¶ 27, 42, Exs. H, P. Macy's also submits evidence that the address listed for Castro on both arbitration agreement mailing lists is the same address to which it mailed Castro's benefit information and W-2s in 2003 and 2004, in addition to all other Macy's mail "for over a decade." Bleckert Decl. (dkt. 19-8) ¶¶ 4-11; Deel Decl. (dkt. 19-5) ¶¶ 3-4. Castro does not claim to have not received this other Macy's mail.

The common law mailbox rule creates a presumption of mail receipt unless the intended recipient can rebut the presumption by actual, credible evidence of non-receipt, which requires more than a bare statement of denial. See Schikore v. BankAmerica Sup. Ret. Plan, 269 F.3d 956, 961 (9th Cir. 2001) (noting that the mailbox rule is intended to avoid "swearing contests" between parties on the question of receipt by mail); see also James v. Comcast Corp., No. 16-CV-02218(EMC), 2016 WL 4269898, at *2 (N.D. Cal. Aug. 15, 2016) (holding that the mailbox rule renders bare denial of receipt insufficient to prove non-receipt of an arbitration agreement); but see Chavez v. Bank of Am., No. C-10-653(JCS), 2011 WL 4712204, at *9 (N.D. Cal. Oct. 7, 2011) (holding that denial of receipt of an arbitration agreement in addition to evidence of an incorrect mailing address is, "although a close question," sufficient to rebut the mailbox rule presumption of receipt).

In the present case, Macy's provides declarations and documents explaining the machines used to mail the arbitration agreement materials, and describing the efforts taken to ensure mail receipt. Lewis Decl. (dkt. 19-7) ¶¶ 5-18. Castro offers no evidence beyond her mere denial of receipt. As such, the Court finds that Castro did receive the arbitration agreement and Opt Out Form by mail.

//

### 2. Implicit Consent

Castro did not expressly consent to arbitrate any disputes with Macy's. Instead, Macy's has demonstrated that Castro failed to return an arbitration Opt Out Form. See Melody Decl. ¶¶ 32, 42. Castro contends that her failure to affirmatively opt out is not evidence of implicit consent to arbitration. Opp'n at 1. The Ninth Circuit has rejected this argument under similar circumstances. See Najd, 294 F.3d at 1109. In Najd, the employer instituted an arbitration program that bound an employee to arbitration unless the employee submitted an opt out form. Id. at 1106. In addressing the employee's argument that his failure to opt out of the arbitration agreement did not indicate consent to arbitrate, the court noted that "where circumstances or the previous course of dealing between the parties places the offeree under a duty to act or be bound, his silence or inactivity will constitute his assent." Id. at 1109. The Ninth Circuit held that the employee had implicitly consented to the agreement to arbitrate, reasoning that "where the import of [the employee's] silence was as apparent as if he signed his consent, we may infer assent." Id. at 1109.[2]

The circumstances in this case similarly allow the Court to infer that Castro implicitly agreed to Macy's arbitration policy by failing to affirmatively opt out. After receiving notice on at least two occasions that she would be bound to the arbitration agreement unless she opted out, Castro failed to return the Opt Out Form. See Melody Decl. ¶¶ 27, 37, 42, Exs. H, L, P. The documents mailed to Castro's home address plainly state the consequences of her failure to opt out. See Melody Decl. ¶¶ 35-46, Exs. F, O. The Court thus finds that Castro did implicitly consent to the arbitration agreement by not returning the Opt Out Form, despite her lack of explicit consent.

### B. Civil Rights Claims

Castro argues that she did not explicitly waive her right to litigate her civil rights claims, because she never acknowledged receipt of the arbitration agreement. Opp'n at 6-7.

---

[2] In Najd, the employee did sign a form acknowledging receipt of the arbitration materials at issue. This Court found this distinction immaterial in a parallel case against Macy's where the plaintiff did not sign an acknowledgment form but did not dispute receiving the arbitration materials. Hicks v. Macy's, No. C-06-02345(CRB), 2006 WL 2595941, at *3 (N.D. Cal. Sept. 11, 2006).

7

1 An employee can waive her right to a judicial forum for Title VII and other civil rights
2 claims by knowingly agreeing to waive the specific rights in question. Ashbey v. Archstone
3 Prop. Mgmt., Inc., 785 F.3d 1320, 1324 (9th Cir. 2015). Indeed, "[a]ny bargain to waive the
4 right to a judicial forum for civil rights claims . . . in exchange for employment or continued
5 employment must at least be express: the choice must be explicitly presented to the employee
6 and the employee must explicitly agree to waive the specific right in question." Nelson v.
7 Bagdad Copper Corp., 119 F.3d 756, 762 (9th Cir. 1997); see also Bohnert v. Roman
8 Catholic Archbishop of San Francisco, 136 F. Supp. 3d 1094, 1117 (N.D. Cal. 2015)
9 (holding that the language used in an agreement to waive one's right to a judicial forum for
10 Title VII claims must be "clear and unmistakable"). Further, the Ninth Circuit holds that the
11 right to a statutory remedy provided by a civil rights law is not knowingly waived "when the
12 employee performs his obligations by commencing or continuing to do his assigned work and
13 accepting a paycheck in return." Nelson, 119 F.3d at 762.

14 In Nelson, the Ninth Circuit found that an employee did not knowingly waive his right
15 to bring civil rights claims by signing a form acknowledging that he read and understood an
16 employee handbook that contained the arbitration clause, because "[n]othing in that
17 acknowledgment notified [the employee] either that the Handbook contained an arbitration
18 clause or that his acceptance of the Handbook constituted a waiver of his right to a judicial
19 forum in which to resolve claims covered by [civil rights statute]." Id. On the other hand, in
20 Ashbey, the court found that an employee had agreed to arbitrate where he acknowledged
21 receipt of a dispute resolution policy that stated unambiguously that the policy applied "to
22 disputes arising out of the employment relationship . . . including, without limitation,
23 disputes over . . . harassment and claims arising under . . . Civil Rights Acts of 1964."
24 Ashbey, 785 F.3d at 1325-26. The Ashbey court distinguished Nelson, noting that "[a]nyone
25 who reviewed the Dispute Resolution Policy would immediately realize he was entering into
26 an agreement to waive a specific statutory remedy afforded him by a civil rights statute." Id.
27 at 1325 (quotation omitted).

28

In light of this precedent, Castro's argument that her failure to sign an acknowledgment form renders the arbitration agreement invalid with regards to her civil rights claims is misguided. Like the dispute resolution form in Ashbey, the arbitration agreement at issue explicitly notified any reader that the agreement applied to "[a]ll unasserted employment-related claims as of January 1, 2004," including any unasserted civil rights claims. See Melody Decl. ¶ 13, Ex. A at 6. The circumstances here permit the Court to find that Castro knowingly agreed to an arbitration policy that provided Castro a clear choice—submit the Opt Out Form or waive the right to a judicial forum for civil rights claims. Further, other courts, including this Court in a prior action, have upheld this arbitration agreement as valid. See, e.g., Hicks, 2006 WL 2595941, at *3 ; Tillman v. Macy's Dep't Stores, Inc., 735 F.3d 453 (6th Cir. 2013); Manigault v. Macy's East, LLC, 318 Fed. App'x. 6 (2d Cir. 2009). Because the Court finds that Castro did receive the 2003 and 2004 arbitration agreement and Opt Out Form by mail, the Court holds that the explicit language they contained was sufficient for Castro to waive her right to a judicial forum for her civil rights claims.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the motion to compel arbitration on all claims and STAYS the case.

**IT IS SO ORDERED.**

Dated: January 24, 2017

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE